# SUPREME COURT.

## PARK agt. CHURCH AND ATWELL.

Where a confession of judgment commenced with the title of the cause, and then proceeded thus, "judgment is hereby confessed in this cause for the sum of $1413," &c.; the statement being signed and sworn to by the defendants, *Held,* that it was a sufficient authority under the Code (§ 383, 1 *sub.*) to enter judgment. This part of the statute is directory merely.

One year bars all relief for irregularity in entering judgment (2 *R. S.* 282, § 2).

Where an execution contains all the requisites specified in § 289 of the Code (which prescribes the form), it is sufficient. Therefore. objections that it is not issued " in the name of the people," nor " tested in the name of the Chief Justice or any Judge," and is not, " on its face made returnable within sixty days," are unavailable, where there is an endorsement on the back directing the sheriff to return it in sixty days.

Where the vendor of a store of goods took from the vendees a judgment to secure a part of the purchase money and entered into a written stipulation not to issue execution thereon in five years, "unless upon an actual examination of the books, accounts of sale, and business of the said parties of the second part (the defendants), in their store aforesaid, he shall have good reason to deem himself insecure," and about one year afterwards the plaintiff being informed that the defendants were about making an assignment, and·learning from one of them that they had consulted counsel about it, and did not know but they should do so before going to New York, that they had got so deeply in debt, and insolvent, that they were not or should not be able to pay their debts; that they owed," &c. And that on the same day the plaintiff with the sheriff, who had the execution, went to the store, found it closed, and the defendants with their counsel within it engaged in writing, and declaring that the assignment had been made some three or four hours previous, but which in fact appeared not to have been made until after the levy by the sheriff on the execution. *Held,* that the plaintiff was excused from a *literal* compliance with the conditions of the stipulation, as to the examination of the books, &c. of the defendants. The substance of the condition was that the *plaintiff should have good reason to believe himself insecure.*

· *Oneida Special Term, April* 1851. Motion to set aside an execution.

CH. H. DOOLITTLE, *for Defendants.*

S. CRIPPEN, *for Plaintiff.*

GRIDLEY, Justice.—It appears from the papers used on this motion, that a judgment was confessed to the plaintiff on the 16th

day of March 1850, for the sum of fourteen hundred and thirteen dollars, for the purpose of securing a balance of that amount, due on the purchase of a store of goods bought by the defendants of him. On the 29th of March 1851, an execution was issued on the judgment and levied on the goods in the store. This motion is made to set aside the execution upon several grounds.

1. It is said that there was an irregularity in the confession of judgment. The particular irregularity relied on is that the confession does not contain any authority to enter judgment pursuant to the first subdivision of section 383 of the Code. The confession of judgment commences with the title of the cause, and then proceeds thus; "judgment is hereby confessed in this cause for the sum of $1413" &c. It is difficult to state the authority in a more direct manner than is done here; especially when we remember that the defendants both swear to this statement, and that in every other respect the confession is admitted to conform to the statute. Again, this part of the statute is directory merely, and the defendants can not be heard to object to it, especially after the lapse of more than a year; one year bars all relief for irregularity (2 *R. S.* 282, § 2; see also Griffin vs. Mitchell, 2 *Cow. Rep.* 548).

2. There are several objections made to the form of the execution. It is said that the execution is to be deemed process of the court by section 286 of the Code; and that by the eighth section of title 1 ch. 3 part 3 of the Revised Statutes (2 *R. S.* 275, § 8), it is provided that all writs and process shall be in the name of the people of the state. It is further urged that the process should be tested in the name of the chief justice or senior judge of the state (2 *R. S.* 198, § 10), and that by section 290 of the Code, the execution should be returnable within sixty days after its receipt by the sheriff. The execution in this case is not in the name of the people, is not tested in the name of any judge, and is not on the face of the process made returnable within sixty days, but on the back is endorsed a direction to the sheriff to return the same in sixty days.

It is to be remarked that the execution contains all the requi-

Park agt. Church and Atwell.

sites specified in the 289th section of the Code, which prescribes the form of the execution. This, the counsel for the plaintiff argued, is enough; and it must be confessed that such an interpretation seems to be in accordance with the spirit of the Code. The revisors in a note to the chapter on executions say that " a revision of the forms of execution then in use is the necessary result of abrogation of those forms; and that in accomplishing this end they have aimed at retaining any necessary feature of final process and nothing more; that the execution is a direction to the sheriff to execute the judgment of the court and should inform him what that judgment is, the place where it is to be found, the time from which it is a lien, the names of the parties, and whether it is to be executed on the property or person of the defendant (*Revisers' Rep.* 197). So too, Mr. Monell, in his book on practice (*Monell's Pr.* 221), holds a similar opinion; he says " formerly an execution issued out of the court was, under seal, tested in the name of the chief justice or first judge, and was subscribed by the clerk. All these formalities are now dispensed with, and the execution is a simple direction to the sheriff or other officer, requiring him to collect the judgment or deliver the real or personal property, according as the judgment is." It is true that the execution is still deemed the process of the court in one sense. It is not the mere direction of the attorney who issues it; but in all other respects the Code itself prescribes what its contents shall be in section 289, before cited. When the Code declares in terms what it shall contain and the execution conforms to the rule prescribed by the statute, it is difficult to say that the process is not warranted by the Code. I am still of opinion that the form of execution given by Mr. Monell in his forms (*Monell's Pr.* 487), is preferable to the form adopted in this case. But that is a matter of taste only, and we can not condemn a form which follows the direction of the statute and contains all that is required by it. But if the rule were otherwise, and if we were now under the old practice, the defects alleged against this execution are all amendable, and can be amended on this motion (1 *Cow.* 199; 4 *Cow.* 158; 3 *Cow.* 39, 42).

3. But the main ground on which this motion is pressed upon the court arises out of a stipulation entered into by the parties, when the judgment was confessed. This agreement recites the sale of the goods, the securing of $600 by a mortgage on real estate, and the residue of the purchase price by the judgment confessed; the plaintiff then "agrees to give the defendants five years to pay the said mortgage and judgment, and not to issue execution on his said judgment against the said parties of the second part unless upon an *actual examination of the books, accounts of sale, and business of the said parties* of the second part, in their store aforesaid, *he shall have good reason to deem himself insecure.*" The defendants complain that the execution was issued without any examination of their books, or accounts, or any request by the plaintiff to see them. This allegation is admitted by the plaintiff; but he states as his excuse for issuing the execution without such examination, that on the 29th of March last he was informed by a neighbor that the defendants were about to fail and to make an assignment, and unless he proceeded without delay it would be too late to secure his debt, and his demand would be lost. In order to get an execution and a sheriff to serve it, he was obliged to go about seven miles to his attorney's residence, and then to Cooperstown, a distance of about eleven miles, to find a sheriff, and that he returned towards night and before the sheriff; that after he returned and before the sheriff arrived, he saw Mr. Church, one of the defendants, and informed him that he had heard that the defendants were going to make an assignment; to which the defendant Church replied that he had consulted Messrs. Gorham & Foster (the attorneys and counsel of the defendants) about making an assignment, and he did not know but they should do so before going to New York; that they had got so deeply in debt, and insolvent, that they were not or should not be able to pay their debts; that they owed $2000 in New York, $800 money borrowed about home; that they had a bank note that would fall due on the 9th of April which they could not meet without borrowing the money. It appeared that the store was soon after closed, and when the plaintiff and the sheriff

Park agt. Church and Atwell.

entered at about 8 o'clock in the evening, they found the defendants and Messrs. Gorham & Foster and one Mattison there; Foster was writing at the desk; Gorham claiming that the assignment had been made three or four hours before, and Foster saying it had been made about one hour before. The plaintiff states as a matter of fact that there was an assignment actually made on that night, although he does not say it was before the levy of the execution. In addition to this, the attempt to keep the plaintiff and the sheriff out of the store, and the suspicious conduct of the parties in the store, and the total omission of this whole subject in the affidavits of the moving party, tend to confirm the belief that the levy was made before the assignment was executed.

Upon this state of facts the plaintiff was excused from a *literal* compliance with the conditions of the stipulation before mentioned. The substance of the condition was that the *plaintiff should have good reason to believe himself insecure*. Of that fact he was fully informed by the defendant Church, before the levy was made.

Again, it is entirely clear that had he gone and made his examination of the books before he went after the execution and the sheriff, the assignment would have been made, before he could have got an execution levied, and his demand would have been lost. Another reason why the plaintiff is relieved from the necessity of making an examination of the defendants' *"books, accounts and business,"* is the undeniable evidence of their bad faith. It was a part of the stipulation above referred to that they should not "remove the goods from the store." There was a strong implication that those goods, or their proceeds should be applied to the payment of the plaintiff's judgment. Hence, the prohibition on the defendants from removing the goods, and the right reserved to levy if on examination he should feel himself insecure. Now when he found the defendants in the very act of disposing of their entire property, by assignment, *they* were guilty of the *first breach of the stipulation*, and they can not complain if they were defeated in their dishonest attempt by his superior

diligence. Doubtless it would have given the defendants an opportunity to assign their property, if the plaintiff had gone through the then useless ceremony of an examination of their books before he levied, but I am satisfied that he was under no such obligation.