GORDON GRANT, Plaintiff, v. ALMON W. GRISWOLD and FREDERICK A. COE, Defendants.

*Power of the court to allow a judgment to be entered against a party after his death—when an application to amend a judgment should be denied on account of the laches of the applicant.*

This action was commenced in November, 1869, to foreclose a mortgage, the plaintiff praying for a judgment for any deficiency that might arise upon a sale, against the defendant Griswold, the mortgagor, and against the defendant Coe, upon an independent guaranty executed by him. Coe died on January 9, 1870. On January 20, the court directed the usual judgment of foreclosure and sale to be entered, as of January 6, 1870, *nunc pro tunc.* This judgment contained no provision charging the defendant, Coe, with any deficiency.

Upon a sale, had in 1877, a large deficiency arose, the premises being purchased by one Wm. H. Grant, who was, upon the death of the original plaintiff, in 1878, appointed his executor. Thereafter, and on December 24, 1879, he, as such executor, moved to amend the said judgment, *nunc pro tunc*, as of January 6, 1870, by inserting therein a provision charging the said Coe with any deficiency that might arise upon the sale.

*Held*, that the court had no power to grant the motion, as the application, though in form one for leave to amend the judgment, was in reality one for leave to enter an original judgment, by default, against Coe, some ten years after his death.

That even if the court had power to make the order, it erred in exercising it in this case, as no excuse was given for the long delay in making the application.

Appeal from an order of the Special Term, directing the entry of a judgment for a deficiency against Frederick A. Coe, now deceased, *nunc pro tunc*, as of January 6, 1870.

*William G. Wilson*, for Ann E. Coe, executrix, appellant.

*William Mitchell, Jr.*, for William H. Grant, executor, respondent.

Barrett, J.:

This is an appeal from an order directing that the judgment in this action be amended so as to charge Frederick A. Coe's estate with a deficiency.

This action was for the foreclosure of a mortgage made by Griswold. It was commenced in November, 1869, by the service of

process on both Griswold and Coe. A deficiency judgment was prayed for against Coe upon an averment of an independent guaranty on his part. Coe died on January 9, 1870, before judgment. The usual judgment of foreclosure and sale was entered on January 20, 1870, but the court, for some unexplained reason, directed it to be entered as of January 6, 1870, *nunc pro tunc.* This judgment contained no provision charging Coe with any deficiency. The sale was delayed until November, 1877, when the premises were purchased by William H. Grant. A large deficiency was the result. Gordon Grant, the plaintiff, died in December, 1878, and William H. Grant (the same person who purchased the premises) was appointed sole executor under his will. After an attempt at negotiation, not necessary to particularize, Grant, as executor, on December 24, 1879, moved to amend the original judgment, *nunc pro tunc,* as of June 20, 1870, so as to make Mrs. Coe, as Coe's executrix, liable for the deficiency. Upon that motion the following order (from which Mrs. Coe now appeals) was made:

"It is ordered, and this court, by virtue of the power and authority in it vested, does hereby order, that the judgment entered in the above-entitled action, June 20, 1870, *nunc pro tunc,* as of January 6, 1870, be amended, *nunc pro tunc,* as of January 6, 1870, as follows, viz.: by making, after the following words therein, viz.: 'The said referee specify the amount of such deficiency in his report of sale, and that the defendant, Almon W. Griswold, pay the same to the plaintiff,' the following addition, viz.: 'And it appearing that the defendant, Frederick A. Coe, is also separately liable for said deficiency under his guaranty, set forth in the complaint in this action, and is also in default after due service of a summons and complaint herein, for want of any appearance, answer or demurrer, it is further ordered that the said Frederick A. Coe is liable to pay, and that he pay such deficiency to the plaintiff.'"

The order contained other provisions, which must stand or fall with that which has been quoted.

1. The first question presented by this appeal is, whether the court had authority to make the order. We think not. The fallacy of the respondent's position lies in the assumption that what he asked and obtained was in reality an amendment to the original

decree. Such was not the fact. Mr. Coe's position as a defendant, sought to be charged upon a collateral obligation, was an independent one. It must not be confused with the situation of the necessary parties to the foreclosure proceeding. The judgment of foreclosure and sale was one thing. A judgment enforcing Mr. Coe's guaranty *in personam* was quite another. Now, here was a judgment of foreclosure and sale, complete and perfect in itself, and needing no amendment. But there was no judgment of any kind, regular or irregular, void or voidable, against Mr. Coe. There was not even an attempt to enter such a judgment. *As to him* it was substantially the same as though he had died in default (but with no judgment yet entered up) in a common law action on the guaranty. The order, though purporting merely to amend the judgment of foreclosure, contains in effect a direction to enter an original judgment on Coe's default some ten years after his death —to enter it, too, as of a date prior to his death, and thus, by relation back, to surmount the obstacle of one dead man recovering a judgment against another. In no just sense was this an amendment; for as to Mr. Coe, there was nothing to amend. It follows that none of the citations furnished by the learned counsel for the respondent are applicable. We have, however, looked at all these authorities (Code Civ. Pro., § 721, subd. 11, 12; §§ 722, 723, 724; *Hogan* v. *Hoyt,* 37 N. Y., 300; *Bank of Newburgh* v. *Seymour,* 14 Johns., 219; *Hart* v. *Reynolds,* 3 Cow., 42, note; *Seaman* v. *Drake,* 1 Caines, 9; *Close* v. *Gillespey,* 3 Johns., 526; *Pelham* v. *Hemming,* Cro. Car., 594; *Thompson* v. *Kessel,* 30 N. Y., 383; *Hunt* v. *Grant,* 19 Wend., 90; *Chichester* v. *Cande,* 3 Cow., 39; *Cox* v. *New York Central & H. R. R. R. Co.,* 63 N. Y., 420), and find that they simply hold the familiar doctrine that a judgment may be amended in furtherance of justice. In *Bank of Newburgh* v. *Seymour,* a defendant's name was added, but the party was alive, and the judgment was substantially upon confession,—*i. e.,* by bond and warrant of attorney. In *Hart* v. *Reynolds,* there was a mistake in the defendant's Christian name, and the amendment was granted on his consent, notwithstanding the opposition of subsequent judgment creditors. There are many other instances of similar amendments,

—such as permitting the judgment to be signed by the clerk, or the plea by the attorney, *nunc pro tunc*. The citation of cases under the old practice was unnecessary, for the power of amendment is now far more liberal and extended. If there had been any informality in the present judgment—any defect, omission, imperfection or mistake arising from the default or negligence of the clerk of the court, or of the plaintiff's attorney,—it could, of course, have been cured under the broad and comprehensive provisions of the Code. But the entire absence of a judgment *in personam* against Mr. Coe was not a defect nor an omission or imperfection therein. The proceedings and judgment are perfect, notwithstanding the absence of such personal judgment. It seems very clear that a judgment, which, as already remarked, was not *even attempted* to be entered, cannot be retroactively *created*, under the guise of an amendment to the foreclosure proceedings.

These observations are equally applicable to the existing *status*, when the original judgment of foreclosure was entered. Mr. Coe was then dead, and no judgment could have been lawfully entered against him. There was no power in the court, either inherent or statutory, to direct any such judgment as of a date prior to his decease. This was explicitly held in *Livingston* v. *Rendall* (59 Barb., 493), where the case of *Nichols* v. *Chapman* (9 Wend., 455) was considered, and the doctrine there enunciated, of relation back to the first day of the preceding term, found to be wholly inapplicable to the present system. (And see Code Civ. Pro., § 1210, with Mr. Throop's note on *Livingston* v. *Rendall*, showing his intention to keep the section in harmony with this case.) The court certainly has no inherent power to enter judgment directly against a party deceased. This is impliedly conceded in all the cases. It results from their exclusive leaning upon the statute and strict application thereof. (*Lewis* v. *Rapelyea*, 1 Barb., 29; *Warren* v. *Eddy*, 13 Abb. Pr. 28; *Burhans* v. *Burhans*, 10 Wend., 601; *Spalding* v. *Congdon*, 18 Id., 543; *North* v. *Pepper*, 20 Id., 677; *Dowbiggin* v. *Harrison*, 10 Barn. & Cres., 480.) The only exception is where a party dies after verdict, and before the decision on a motion for a new trial. There the court has inherent power to direct the entry of judgment as of a date pre-

ceding such death. (*Ryghtmyre* v. *Durham*, 12 Wend., 245.) The reason of the latter rule is, that the party shall not be prejudiced by the delay of the court in giving judgment, if it can be avoided. (2 Tidd, 965.) To prevent that, as was said by Cockburn, Ch. J., in *Moor* v. *Roberts* (3 C. B., N. S., 845), it is to be treated as though the appellate action had taken place at the trial. Such a proceeding, he remarks, is "not under the statutes, but under the ordinary inherent jurisdiction of the court. The whole is to be taken to have been done at the trial."

Then, as to the statute. The provisions of the Revised Statutes (2 R. S., 387, § 4), permitting final judgment in the names of the original parties, within two terms, after verdict or plea, notwithstanding the death of either party, applied only to a verdict or plea of confession. Even a nonsuit was not included (*Spalding* v. *Congdon*, *supra*, and see *Dowbiggin* v. *Harrison*, *supra*), much less an ordinary default. Indeed, the following section (§ 5) expressly provides that nothing in section 4 "shall be construed to authorize the entry of a judgment against any party who shall have died *before a verdict actually rendered against* him, notwithstanding he may have died on the first or any other day of the term or sitting of the court at which such verdict shall have been taken, *but such verdict shall be absolutely void.*"

These provisions have been adapted to the present system by section 763 of the Code of Civil Procedure. That section reads as follows : "Sec. 763. If either party to an action dies after *an accepted offer to allow judgment to be taken, or* after a *verdict, report or decision* or an *interlocutory judgment,* but before final judgment is entered, the court must enter final judgment in the names of the original parties ; unless the offer, verdict, report or decision, or the interlocutory judgment is set aside." This also excludes an ordinary default. An "accepted offer to allow judgment" is a substitute for the old plea of confession. It has a precise meaning, and refers to the formal and specific procedure under section 738. The words "verdict, report or decision" cover trial by jury, by a referee, or by a single judge. This becomes still clearer when we read in section 765 that "This title does not authorize the entry of a judgment against a party who dies *before a verdict, report or de-*

*cision is actually rendered against him. In that case, the verdict, report or decision is absolutely void.*" The learned counsel for the respondent insists that Coe's default was equivalent to a confession of judgment; we cannot agree that the same effect should be given to mere inaction, as to a distinct affirmative act. But even if this were so, it would not avail the respondent, for it is expressly provided in section 1275 (lest there should be a doubt on that head, as Mr. Throop observes) that *judgments shall not be entered upon confession after the defendant's death.*

It is entirely clear, therefore, that the court had no authority on January 20, 1870, to enter a judgment for deficiency against Mr. Coe, either directly or indirectly by relation back to a date prior to his death. Such a judgment would have been void. Thus there was no omission on the part of the plaintiff's attorney. He entered the only judgment he then had a right to enter. Any further proceeding upon the guaranty would have necessitated the bringing in of Mr. Coe's representatives. In *Harrison* v. *Simons* (3 Edw. Ch., 394), the vice-chancellor held that there was no occasion to revive where *the mortgagor* dies *after decree* and before enrollment. That he said was *because the decree was only to be enforced against the property* by a sale and conveyance of title to a purchaser. He admits, however, that *if even the decree* remained to be enforced *in personam*, it might be necessary to revive and bring in the personal representatives of the deceased. This case was approved of in *Hays* v. *Thomas* (56 N. Y. 521). It leaves no doubt whatever as to the necessity for revival *before decree*. If, then, a judgment entered against Coe personally on the 20th, as of the 6th of January, 1870, would have been void, *a fortiori*, a judgment directed *upwards of ten years after his death, with the intermediate incident of the plaintiff's death*, would be void.

(2) But even if the court had power, it should not exercise it in such a case. We have carefully considered the affidavits and papers before us and are of opinion that there is not a particle of legal evidence tending to show Mr. Gordon Grant's ignorance of the true state of affairs. Indeed, the probabilities are all the other way. Nor is there any good reason to believe that he would have made

or countenanced any such motion as the present. Upon the whole, we think that Mr. Gordon Grant's representatives may well be left to their strict legal rights, unaided by the special or extraordinary favor of the court.

The order appealed from should therefore be reversed, with $10 costs and the disbursements of the appeal, and the motion to amend the judgment be denied, with $10 costs.

DAVIS, P. J., and INGALLS, J., concurred.

Order reversed.