## SUPREME COURT.

### GELLER agt. HOYT.

Where a judgment was docketed correctly as to the christian and surname of the defendant, but incorrectly as to the initial of the middle name, and the docket was afterwards corrected on motion, *Held*, that the judgment took priority as a lien from the date of the original docketing, as against a subsequent judgment obtained before the correction.

The county in which a motion should be made is not a question of *jurisdiction.*

Where one creditor has the first lien on two distinct securities, and another has a subsequent lien on only one of them, the latter has an equity to insist that the former should resort first to the security on which the latter has no lien.

*New York Special Term, September* 1852. Azor Hoyt owned certain lands in this city and mortgaged them to the plaintiff. Afterwards, on the 22d April 1850, he conveyed them, subject

Geller agt. Hoyt.

to the mortgage, to Samuel I. Smith, who, on 1st June 185\`, executed another mortgage for $1,600, on the same premises, to E. N. Cobb, which was duly recorded.   One Bloomingdale obtained a judgment against Smith in the Supreme Court, for more than $7,000, which was entered in Albany on 25th October 1851, and of which a transcript was filed and docketed in the office of the clerk of this county on 27th October 1851.   Blydenburgh now owns that judgment, and it is unpaid.   On 15th March 1852, Tyler obtained judgment in this court against Smith for upwards of $2,000, which was duly docketed on that day; and on 27th March 1852, Tyler took out an order supplementary to an execution for the examination of Smith, and enjoining him from assigning any of his property, which was served on Smith on that day.   Before this last judgment was obtained, Cobb's mortgage had been reduced to $1000, and he had received from Smith two promissory notes of $500 each, made by Peck, a debtor of Smith, " as collateral security for the payment of said mortgage, and he gave a receipt stating that the notes, when paid, would be in full of the amount due on the mortgage."   Also before March 1852, the plaintiff had commenced a foreclosure of his mortgage, and the mortgaged premises were sold under that foreclosure by order of this court, on 16th April 1852, and yielded a surplus of $1,399·47.   On 21st April 1852, Tyler served on Cobb notice of the proceedings against Smith, and claimed a lien on the notes.

On 2d June 1852, the whole purchase money was paid to the sheriff.   On the 5th of that month, Peck paid the amount of the two notes to Cobb, who still holds the money and the bond and mortgage.   Peck was probably persuaded by Blydenburgh to make the payment.

The judgment in favor of Bloomingdale was made up correctly against Samuel I. Smith; but in the judgment book in Albany, and in the docket there and in this county it was entered as against Samuel T. Smith.   On 29th May 1852, the docket here was corrected by order of a judge of this court and of the first district, while at chambers—but by an order as in court (§ 401); and Blydenburgh, with his consent, was on that day made a party defendant to the foreclosure suit.

Geller agt. Hoyt.

Blydenburgh and Tyler now oppose each other, each claiming for himself the whole surplus; all objections as to the form in which the questions are brought up, are waived.

———— ————, *for Plaintiff.*

———— ————, *for Defendants.*

MITCHELL, Justice.——It is objected to the judgment held by Blydenburgh, that it was not a lien as against a subsequent judgment creditor, because it was not docketed so as to give the true name of the defendant. The christian and surnames were given correctly, and these, for some purposes, constitute the whole name, and afterwards the error in the letter T, which is not a name, but only an *initial* of a middle name, was corrected by order of the court, by substituting the *initial* '*I*' in place of '*T*' in the docket here. The *judgment* was right and needed no correction; and as to lands here, it was immaterial where the docket was in Albany; a transcript is to be made from the judgment (Laws of 1840, *p.* 334. § 26), not from an erroneous docket. The judges in the first .district have power to make orders at chambers as if they were in court; and although the venue was laid in Albany, any Supreme Court Justice had *jurisdiction* to hear the motion and make the order, although if objection were made, he should not hear the motion; the order when made is the order of the Supreme Court. It is said that the order affected third persons; the answer was given in Chichester vs. Candee (3 *Cow.* 39, 56), that " all amendments may affect, more or less third persons;" but if justice requires that they should be made, that objection will not prevent their being made; still the court would save the right of bona fide purchasers, and incumbrances for a new and valuable consideration: a judgment creditor for an antecedent debt is not in this class. Then what were the rights of Bloomingdale before Tyler got his order for the examination of Smith, and what rights did Tyler acquire by that order? Assuming the most that is contended for, that order gave no greater right to Tyler than if Smith had then executed an assignment to him; that is, it passed to Tyler all Smith's title in any personal property , or rights of action which he had, *subject* to any equities or rights which other persons had in such property.

Before that order, Bloomingdale had, by virtue of his judgment, a lien on Smith's real estate, and on that alone. Cobb had, by virtue of his mortgage, a prior lien on the same real estate to the extent of $1000, but had also a lien on the two notes for the same $1000. Cobb then had two securities for his debt and Bloomingdale had only one of those securities. Bloomingdale had, therefore, an equity to insist that Cobb should pay himself out of the security on which Bloomingdale had no lien, namely, the notes, and leave the other security, the land, to be resorted to by Bloomingdale alone. Smith's title to the notes was subject to this equitable right in favor of Bloomingdale, and when the order was made against Smith enjoining him from assigning his property, he had no right in the notes except subject to this equity in favor of Bloomingdale, and he could pass no right to Tyler except subject to that right. The surplus, therefore, must be considered as passing to Bloomingdale, under the judgment in his favor, or to his assignee.

As the difficulties arose from the omission of Bloomingdale, or those acting for him, and there has been no unfair litigation, the costs of both parties on the reference should be paid out of the fund.