PETER V. KING *et al.* v. DENNIS HARRIS *et al.*

Where several judgments have been filed and docketed, and the one having a prior lien has afterwards been vacated by an order of the Special Term, which order, on appeal to the General Term, is subsequently vacated, and the original judgment affirmed, the lien which was thus suspended is restored on the affirmation of the judgment by the General Term; and where no new rights have been acquired by the other judgment creditors by proceedings under their several judgments, all parties are restored to their original rights.

Where the lien of a judgment is suspended by an order vacating the judgment, when such order ceases to have any validity by being vacated, the lien is revived, as though it had never been suspended.

*Amasa J. Parker,* for the appellants.

*R. M. Harrington,* for the respondents.

LEONARD, J. This case involves the priority of several judgment creditors, as between themselves, in relation to a fund arising upon the sale of real estate in the city of New York under the foreclosure of a mortgage.

The order in which the several judgments were docketed is as follows, viz.: That of Theodore C. and David D. Foote, January 1, 1856; that of Bartolome Blanco, April 3, 1856, in an action commenced by attachment, issued pursuant to the Code, January 2, and levied on the land of the debtor January 7, 1856. That of Jose T. Alfonzo and others January 30, 1856.

The judgment in favor of Blanco is claimed to have priority from January 7, by relation to the time of levying the attachment. On the 29th of February, 1856, an order of the Supreme Court, where all the said judgments were recovered, was made setting aside the judgment of Messrs. Foote for irregularity, and an entry was made upon the docket of that date, "vacated by order of the court."

This order was reversed or vacated at the General Term, by default, on the 8th of May, 1856, but no entry thereof was made on the docket till the 21st of October, 1856, when the clerk entered thereon as follows, viz.: "Order vacating

judgment set aside by General Term." A motion was afterwards made at General Term to open this order taken by default, but the motion was denied.

The foreclosure suit was commenced in June, 1856, and the judgment of Messrs. Foote appearing on the docket to be vacated, those gentlemen were not made parties to the action, but the plaintiffs in the two subsequent judgments were joined as defendants therein. The premises were sold under the judgment of foreclosure in February, 1857, and the surplus proceeds were deposited with the chamberlain to the credit of this action.

Upon a reference to ascertain the priorities among the judgment creditors, the referee reported that the judgment of Mr. Blanco took effect as a lien, by relation, on the 7th of January, 1856, when the attachment was levied, and that this judgment was the first lien and entitled to the surplus money.

The report was confirmed by the Special Term of the Supreme Court, but on appeal it was reversed by the General Term, where it was held that Messrs. Foote were entitled to the priority, and the fund was directed to be paid to them.

The case now comes up on appeal from the last order.

The judgment of Messrs. Foote was regularly docketed so as to constitute the first lien on the lands of the debtor, and so continued, unquestionably, till the entry on the docket of the order of February 29th, 1856.

The judgment was then held to be irregular and vacated. But that order was erroneous, and was subsequently reversed. As to *bona fide* purchasers, and those standing in a similar relation, and as to all transactions and proceedings influenced or affected injuriously by the vacation of the judgment, it must be held operative and binding, notwithstanding its erroneous character, provided the transactions were entered into while the judgment appeared from the docket to be vacated, except, perhaps, such persons as knew of the order of May 8th, 1856, reversing the former order of Feb. 29th.

Thus the foreclosure action, having been commenced during that period, was not defective as to parties, although the

Messrs. Foote were not joined as defendants. The purchaser under the judgment of foreclosure, acquired a perfect title to the premises, not affected by the judgment. The term *bona fide*, as applied to purchasers, mortgagees, and incumbrancers, includes only such persons as have parted with some value, or who will sustain some injury by reason of the entry vacating the judgment on the docket, and its subsequent restoration as a lien.

The appellants have parted with nothing in consequence of the judgment of Messrs. Foote not appearing on the docket as a lien. Its restoration leaves the appellants in the same plight that they were in before the entry of the erroneous order vacating the judgment, which had obtained a prior lien. They can claim no vested right to have a prior valid judgment and lien erroneously continued, to be vacated on the docket.

The statutes, as to the docketing and lien of judgments, does not affect the question. Everything has been done in that respect, on behalf of Messrs. Foote, which the statutes required. The present case differs in this particular, from that relied on so much by the learned counsel for the appellants, as controlling in their favor.

The case of *Buchan* v. *Sumner* (2 Barb. Ch., 165), turned upon the fact that the judgment had not been docketed so as to create a lien. The statute requires an alphabetical docket, and the judgment against Sumner had not been docketed against that name, but under the letter P, against Palmer.

The correctness of the decision is not free from doubt, upon principle, as against subsequent liens which did not stand in the *bona fide* relation of having parted with a consideration, or sustained an injury to arise from the error in the docketing.

The case of *Sears* v. *Burnham*, decided in this court, and reported in 17 N. Y., 445, on the other hand, holds that the statute relating to the docketing of judgments is directory; that an error which is amendable by the court in which the judgment was rendered, will not vitiate the lien of such judg-

ment as against persons who have not been actually misled and prejudiced thereby. This was so held in respect to the proceeds of a sale, under a surrogate's order, of real estate subject to the lien of a judgment, the year of the rendition whereof was erroneously stated in the transcript.

In *Hart* v. *Reynolds* (note 1, *Chichester* v. *Cande*), 3 Cow., 39, 42, a docket was amended by correcting the name of the defendant as against subsequent judgment creditors, saving the rights of *bona fide* purchasers and mortgagees.

It appears to be free from doubt, to my mind, that the court can correct their own error in vacating a judgment which had been regularly entered and docketed, so as to create a lien upon land, as against subsequent judgment creditors who have not been misled or prejudiced thereby, without the aid of the authorities which have been cited, holding the power of the court to correct and amend an erroneous docketing of a judgment.

The judgment of Messrs. Foote was always regular, and needed no amending. By an error of the court below its operation was suspended. That error, when discovered, must be held to be inoperative as against subsequent judgment creditors who have not been misled or prejudiced thereby.

The order appealed from should be affirmed with costs, to be paid by the appellants.

The judgment of Messrs. Foote being large enough to absorb all of the fund, it is not necessary to examine the question raised by Messrs. Alfonso and others respecting the relation of the judgment of Mr. Blanco to the time of the levy of the attachment.

DAVIES, Ch. J. This is a controversy between judgment creditors of one Dennis Harris, as to which is entitled to the surplus moneys in court arising from the foreclosure of a mortgage given by Harris. On the first of January, 1856, the Messrs. Foote recovered a judgment against Harris for $4,607.30, and which was regularly filed and docketed on that day. That judgment is larger than the surplus moneys

in controversy, and if it is a valid and prior lien thereon, more than sufficient to absorb the whole amount thereof.

Bartolome Blanco claimed said surplus moneys under a judgment obtained against Harris, and which was filed and docketed on the 3d of April, 1856. The action in which the judgment was obtained was commenced by attachment under section 227 of the Code, issued on the 2d January, 1856, delivered to the sheriff on the same day, and who levied on all the estate, real and personal, of the mortgagee, Harris, on the 7th of January, 1856; and Blanco claims that his judgment relates back as a lien, by virtue of said attachment, to January 7th, 1856. Jose T. Alfonso and others also recovered a judgment against Harris, which was filed and duly docketed on the 30th day of January, 1856, for $13,610.65. The sale of the mortgaged premises took place February 5th, 1857, and the surplus moneys in the chamberlain's hands amount to $2,446.25.

The referee to whom it was referred to ascertain the priorities of the liens, reported that Foote's judgment became a lien on the mortgaged premises January 1st, 1856, and so continued till February 29th, 1856, when the judgment and docket thereof were vacated, and that said lien was not revived till October 21st, 1856, when the docket was restored. That Blanco's judgment, docketed April 3d, 1856, related back to the levy of the attachment, January 7th, 1856, and became a lien from that day, and that Blanco was entitled to the fund in court as having the first lien. Upon exceptions to this report, on the part of Messrs. Foote and of Alfonso and others, the report was confirmed at Special Term, and from such order of confirmation, appeals were taken by the same parties to the General Term. The General Term affirmed the order on the appeal of Alfonso and others, and reversed it on the appeal of the Messrs. Foote, and adjudged that they were entitled to said surplus moneys by virtue of their judgment against Harris, docketed on the first day of January, 1856.

From this last mentioned order of the General Term, Blanco and Alfonso and others appeal to this court.

The referee disallowed the claim of Messrs. Foote, to said surplus moneys, upon this state of facts. On the 29th day of February, 1856, an order was made at Special Term of the Supreme Court, setting aside and vacating the judgment in favor of Messrs. Foote against Harris, and the execution issued thereon for irregularity, and also vacating the docket of the judgment. A memorandum of this order was entered on the docket. On appeal to the General Term, this order of the Special Term was vacated and set aside, by an order of the General Term, May 8th, 1856. This order was delivered to the clerk May 12th. A memorandum of this order was entered on the docket October 21st, 1856.

Upon motion at General Term on the part of Harris, an order was made November 23d, 1857, by default, that the order of May 8th, 1856, be opened, and the appeal from the order of February 29th, 1856, was ordered to stand for argument, and on the 23d of November, 1857, the General Term made an order that the order of November 23d be vacated and wholly set aside, and the motion to set aside the order of May 8th, 1856, was denied.

I am entirely satisfied with the reasons given by the General Term for the order made by that court, adjudging the surplus moneys in controversy to the claimants, the Messrs. Foote. If this judgment is the prior lien, it being more than sufficient to absorb the whole surplus moneys, it becomes wholly unnecessary to examine the antagonistic claims thereto of Blanco and Alfonso and others. It is conceded that the lien of the Foote judgment was anterior to the judgment of either of the claimants, but they contend that such lien was lost by reason of the order of February 29th, 1856, whereby that judgment was vacated. It is to be observed that whatever lien either of the claimants acquired, it was during the conceded lifetime of the Foote judgment, and subordinate to the lien of that judgment. The order of February 29th, vacating that judgment, could, during its lifetime, only give precedence to the lien of the judgment of the other claimants. They took no proceedings under those judgments, and acquired no new rights, during this

period. They parted with nothing on the faith of this order, and when it was vacated and set aside on the 8th of May, 1856, the plaintiffs in the Foote judgment were restored to their original position and rights, and the other judgment creditors to their original rights. The setting aside the order placed all parties affected by it in their original posture, and if no new rights or equities had sprung up in the meantime, each resumed his original lien on the lands of the judgment debtor. The judgment of the Footes had been properly and legally docketed, so as to create a lien on the lands of Harris. That lien was suspended during the lifetime of the order of February 29th, and when it ceased to have any vitality or effect, by its being vacated, the lien revived, and was as if it had never been suspended. Of course, if *bona fide* purchasers had, in the meantime, intervened, their rights would have been protected. But neither of the claimants to these moneys stand in any such attitude. The lien of Footes' judgment was perfect and complete at the time when the other claimants acquired their lien. In this significant particular this case differs from that of *Buchan* v. *Sumner* (2 Barb. Ch., 165). In that case the judgment had never been docketed according to law, and it was therefore correctly held, that no judgment will affect any lands, &c., or have any preference as against other judgment creditors, until the record thereof has been filed and docketed. As already observed, the judgment of the Footes was legally docketed, and was a prior lien to that of the other claimants. When the order vacating that judgment was set aside, that lien was revived in all its pristine vigor, and was as effective as before that order was made, except as to rights acquired in the meantime. These claimants having acquired none, it follows that the order of the General Term, awarding the surplus moneys to the Messrs. Foote, were correct and should be affirmed with costs.

All the judges concurring,

Order affirmed.