## FOOT and others *vs.* DILLAYE.

A judgment was recovered, in this action, by the plaintiffs, at Special Term, on the 9th, and docketed on the 10th of October, 1866. At that time the defendant was the owner of a lot of land on which the said judgment became a lien. The defendant appealed to the General Term, where the judgment was reversed, and a new trial ordered, October 3, 1867. On appeal to the Court of Appeals, that court, in January, 1873, reversed the order and judgment of the General Term, and affirmed the judgment of the Special Term. Intermediate the judgment of the General Term and the judgment of reversal by the Court of Appeals, viz., on the 30th of August, 1869, a corporation purchased and took a conveyance of said lot, from the defendant, for $22,500, fully paid, in good faith. Previous to such purchase and conveyance, a certificate of the fact of reversal had been filed in the clerk's office, and an entry made by the clerk in the docket of judgments, opposite the entry of said judgment, showing that the judgment had been reversed. The book submitted to the persons employed by said corporation to pass the title showed the same fact; and the corporation and its officers relied upon such entry, in accepting the title. On a motion to stay execution upon the judgment; *Held,* 1. That the certificate of the fact of reversal was sufficient authority to the clerk to discharge and cancel the docket.

2. That it was only in virtue of the docket that the plaintiffs had any authority to levy upon and sell the lot in question; and that being discharged and cancelled, at the time the corporation purchased and took a title, that they acquired the fee, free of the lien of the judgment.

3. That the lien of the judgment was not restored by the subsequent decision of the Court of Appeals, reversing the judgment of the General Term of this court.

4. That the corporation having purchased a title free of the lien of the judgment, the plaintiffs should be summarily and perpetually stayed from all attempts to sell the lot upon the judgment.

The court has power to control its judgments and process; and the power may be summarily exercised, to prevent the property of a *bona fide* purchaser from being sold.

THIS motion is made to stay all execution upon a judgment recovered by the plaintiffs in Oneida county October 9, 1866, and docketed in Onondaga county October 10, 1866.

The defendant Dillaye was then the owner of a lot situated on James street, in the city of Syracuse. On the 30th day of August, 1869, "The Trustees of the Episcopal Residence" in Syracuse purchased and took

a conveyance of said lot, from F. C. Dillaye, for $22,500, fully paid, in good faith, for the residence of the bishop of the Protestant Episcopal Church for the diocese of central New York.. The defendant appealed to the General Term of this court, and the said judgment was reversed, and a new trial ordered, in the action, October 3, 1867. The plaintiffs then appealed to the Court of Appeals, and in January term, 1873, the Court of Appeals reversed the order and judgment of the General Term, and affirmed the original judgment for $1,283.46, of October 9, 1866. At the time of the conveyance of said lot, there was in the Onondaga county clerk's office an entry in the docket, and opposite the entry of said judgment, theretofore made by the county clerk, showing that the said judgment had been reversed; and the book submitted to the persons employed by said corporation to pass the title, showed the same fact; and the said corporation and its officers relied upon such entry, in accepting the title.

*George F. Comstock*, for the motion.

*D. M. K. Johnson*, opposed.

HARDIN, J. When the "Trustees of the Episcopal Residence" became the purchasers and grantees of the lot upon James street, a certificate had been filed in the clerk's office of Onondaga county, and an entry made in the docket of the judgment recovered by the plaintiffs, of "the fact" of the "*reversal*" of the judgment. That entry was in full force, and operated to "discharge and cancel such docket" of the judgment. The certificate of "that fact" of reversal was sufficient authority to the clerk of Onondaga county to discharge and cancel the docket. (3 *R. S.* 641, 5*th ed. Laws of* 1844, *ch.* 104.)

It is only in virtue of the docket of the judgment that

Foot *v.* Dillaye.

the plaintiffs had any authority to levy upon and advertise and sell the lot in question; that being discharged and cancelled at the time "the trustees" purchased and took a title, they acquired the fee free of the lien of the judgment. (47 *N. Y.* 157. 2 *Barb. Ch.* 165.) The statute quoted, and the authorities upon the effect of a purchase, at the time when the lien of a judgment is discharged, are so clearly applicable to the question presented as to require the court to hold that the lien of the judgment was not restored by the subsequent decision of the Court of Appeals reversing the decision of the General Term. (*Jackson* v. *Benedict,* 13 *John.* 533. *Taylor* v. *Rayney,* 4 *Hill,* 619. *King* v. *Harris,* 34 *N. Y.* 330. *S. C.,* 30 *Barb.* 471.)

It is said by MULLIN, J., in the opinion delivered at General Term, that when a reversal of an order takes place, the reversal does not revive the lien of a judgment "for all purposes and against all persons;" and he then adds what is applicable to the position of the trustees here, viz: "But the *bona fide* purchasers and incumbrancers deal with property with notice and on the faith of the order vacating the judgment; in other words, they deal with the debtor's property as if the judgment had never been a lien on it." "They pay or advance money upon the property freed from the lien of such judgment. Having thus acted, it would be a fraud upon them to revive the lien and give it a preference over their lien or title." (30 *Barb.* 475.)

The learned counsel opposing this motion insists that the same effect should be given to the reversal of the order of the General Term, in its effect upon the lien of the judgment, as is given to the reversal of the General Term, upon the liability of the parties to an undertaking given upon the first appeal.

In this case, the statute declares that the lien shall "be discharged and cancelled." It is free when the rights of the purchaser attach. But in the cases where

the undertaking is revived, and the liability of the sureties revived, the parties are held to have covenanted, or stipulated, to *abide by the final judgment* upon appeal—to have made their undertaking *to abide the final* judgment.

That final judgment being adverse, they, by the very terms of their undertaking, are bound to pay. (*Robinson* v. *Plimpton*, 25 *N. Y.* 486. *Gardner* v. *Barney*, 24 *How.* 467.) The power of the court exists to control judgments and process, and may be summarily exercised to prevent the property of a *bona fide* purchaser from being sold.

The trustees purchased a title free of the lien of the judgment, and therefore the plaintiffs should be summarily and perpetually stayed from all attempts to sell the same upon the judgment. (*Wilson* v. *Smith*, 2 *Code R.* 18. *Blodget* v. *Blodget*, 42 *How.* 19.)

An order to that effect must be allowed.

[HERKIMER SPECIAL TERM, September 2, 1873. *Hardin*, Justice.]