Annie T. Curnen, Appellant, *v.* The Mayor, Aldermen and Commonalty of the City of New York, Respondent.

A fact, admitted by a municipal corporation through its officer duly and properly acting within the scope of his authority, is evidence against it; and cannot be withdrawn to the prejudice of one who in reliance upon it has changed his position in respect to the matter affected thereby.

The doctrine of estoppel applies in such case to a corporation as well as to an individual.

An assessment roll is akin to a judgment, and if an assessment is erroneously discharged of record, its lien cannot be restored so as to affect *bona fide* purchasers, or others standing in a similar relation, whose transactions were entered into in ignorance of the error and in reliance upon the truth of the record.

In an action to compel the defendant to discharge a lot in the city of New York belonging to plaintiff from the lien of certain assessments, and to discharge the same of record, it appeared that before plaintiff paid the purchase price for the lot, she ascertained, at the proper office, from the official records, that two assessments, laid in July and August, 1872, upon the lots, were marked upon the record of assessments as "paid by Killian Brothers,  * * * March 7, 1873." Plaintiff thereupon, after deducting certain assessments, which appeared in the records unpaid, paid the balance of the purchase money and received a deed in November, 1873. These assessments were, in fact, paid at the time stated, by

Killian Brothers, they supposing the lot was their's, when, in fact, it was not; and the entry was then made by the official having charge of the record. In August, 1876, Killian Brothers commenced an action against defendant to recover back the moneys so paid, alleging they were paid through mistake. Plaintiff was not made a party, and had no notice or knowledge of the action. Defendant served an offer allowing judgment to be entered therein for the amount claimed; judgment was so entered to that effect; and also directing that the entries of payment be cancelled, which was done. *Held*, that plaintiff was entitled to the relief sought; that the fact that the payment was entered as made by Killian Brothers was not sufficient to put plaintiff upon inquiry or charge her with constructive notice of the error; nor was the fact, that in making and receiving the payment the parties acted under a mistake, material so far as plaintiff was concerned.

Also, *held*, that the provision of the act of 1853 in relation to the collection of arrears of taxes, etc., in the city of New York (§ 16, chap. 579, Laws of 1853), providing for the obtaining of receipts or certificates from the clerk of arrears showing payment of assessments, had no application; as it relates only to assessments which have been due twelve months and over, while the assessments in question were paid within nine months after they were due, and while they were still in the collector's office.

*It seems*, that such receipts or certificates are not the only evidence of the removal of the liens of assessments, even as to those specified.

(Argued December 19, 1879; decided January 13, 1880.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of defendant, entered upon the report of a referee.

This action was brought to compel the defendant to release and discharge a lot owned by plaintiff in the city of New York from the lien of two assessments, imposed for local improvements, and to cancel of record the said assessments.

The facts appear sufficiently in the opinion.

*W. H. McDougall*, for the appellant. A lien upon lands, created by statute and without the owner's consent, and without any process of law, when once canceled is lost as against a *bona fide* purchaser. (3 N. Y. 547; 2 Duer, 323; *Sharp* v. *Spier*, 4 Hill, 82.)

*D. J. Dean,* for respondent.   The assessments have never been actually paid by the plaintiff or her predecessors in title, therefore her claim to have them canceled upon the ground of payment cannot be maintained.   (*Mayer* v. *The Mayor,* 63 N. Y., 455; *Mayor* v. *Colgate,* 12 N. Y., 140; 43 N. Y. Rep., 452.)   The entry of the mistaken payment upon the assessment books does not estop the city from now asserting the actual fact that the assessment is unpaid, and from correcting the entry in conformity to the fact.   (*Mayer* v. *Mayor,* 63 N. Y. R., 458.)

DANFORTH, J.   The plaintiff purchased the property in question (known as block No. 101, ward No. 50 a).   Before paying the purchase price, or accepting a conveyance, she ascertained at the proper office, and from the official records, that two assessments theretofore, and prior to August 3, 1872, imposed thereon, were marked upon the record of assessment, "paid by Killian Brothers," in the column headed "By whom paid," and "March 7, 1873," in the column headed "When paid."   It was conclusively established by the defendant's admissions, and the finding of the referee, that the amount of these assessments was in fact paid at the time stated, and that thereupon the official receiving payment, and who, as such official had charge of the record books, made the entries, "and that such entries were the usual mode in which assessments were marked cancelled in the records."   Other assessments for taxes and water rents upon the property, appeared on the same records as unpaid.   These were deducted from the purchase price, but the residue was paid by the plaintiff, making no deduction on account of those marked "paid," and she received a deed of the premises in November, 1873.   In August, 1876, Killian Brothers commenced an action against this defendant to recover back certain moneys theretofore, as they alleged, paid by them through mistake, upon various assessments, and among others the one above stated.   The plaintiff herein was not made a party to that suit, and had no notice or knowledge of

it. In August, 1876, the defendant answered; setting up that the assessments were valid and subsisting liens upon the lots, and that the collector of assessments had the right to collect and receive them from any person offering to pay the assessments; that they were received by the collector of assessments without mistake, paid by the plaintiffs voluntarily, " and that upon such payments the said collector did cancel said assessments upon said lots, and release said lots from the liens thereof." On the 6th of September, 1876, the defendant served an offer allowing judgment to be entered in that action in favor of Killian Brothers, for the amount claimed, and also that the entries upon the assessment book above referred to, showing the payments upon lot fifty $(a)$, be cancelled, and thereupon judgment was entered to that effect. The referee finds that thereafter, and on the 13th of September, 1876, " the comptroller authorized the collector of assessments, and clerk of arrears, to carry out its provisions for the correction of the errors made by mistake, in receiving the two assessments, by cancelling the entries made upon the assessment books, showing the payments of the two assessments." This was done, and they now stand as apparent liens against the lot purchased by the plaintiff. It appeared also that the collector of assessments had prior to the payment by Killian Brothers, presented them with bills of taxes alleged to be due upon their property, and among other lots mentioned said lot fifty $(a)$, and the same was paid by them, " supposing that said lot fifty $(a)$ was their lot," when in fact it was not.

The learned counsel for the respondent claims nothing from the action or judgment in favor of the Killians, or the proceedings under it, but asserts that the original entry showing payment was erroneous, and that the defendants had an "inherent right to correct it." If the question concerned no one but the defendant, and the person whose duty it was to pay the tax, this might be conceded, but a fact once admitted by a corporation, through its officer, duly and properly acting within the scope of his authority, is evidence

against it, and cannot be withdrawn to the prejudice of any one, who in reliance upon it, has changed his situation in respect to the matter affected thereby. In such a case the doctrine of estoppel applies to a corporation, as well as to an individual.

The assessments in question were not only liens upon the property described, but charges for which the owner of the property at the time of assessment was personally liable, and whether the corporation sought to enforce them by action, or by a sale of the property, while owned by him, would be immaterial; in neither event could he avail himself of a record which was not in fact true, or the city be precluded from explaining it. (*Mayor, etc.* v. *Colgate*, 12 N. Y., 140.) It may also be conceded that if the rights of third parties did not intervene, Killian Brothers could have obtained by adverse proceedings, the judgment to which the city consented, or that without judgment the defendant might have paid back the money received by it, and been guilty of no misuse of corporate property. The case of *Mayer* v. *The Mayor* (63 N. Y., 455), holds this. It stands upon the general rule that money paid under a mistake of fact, may be recovered back, but as is there stated, this rule is "subject to the qualification that the payment cannot be recalled, when the position of the party receiving it has been changed in consequence of the payment, and it would be inequitable to allow a recovery;" and it may well be that if it had there appeared that after the mistaken payment the property assessed had passed into the hands of one buying in good faith, and for value, and that the person assessed had become insolvent since the payment, the defendant would have been permitted to retain the money. The learned judge who delivered the opinion in *Mayer* v. *The Mayor*, *etc.* (*supra*), so guards the conclusion reached, that the case is no authority for the defendant here. After stating the general rule he says: "It does not appear that the assessment was in fact cancelled of record, or that the evidence that the lien was discharged, authorized to be given by sec-

tion 16, chapter 579, of the laws of 1853, was required, or was furnished. If an entry was made of its payment, no reason is shown why, upon discovering the mistake, it might not have been corrected, and the collection enforced against the person liable to pay the assessment, or upon his default, by a sale of the land in respect to which the assessment was made." "It does not appear," he adds "that there has been any change of title, and the rights of subsequent purchasers are not in question."

It is not unreasonable to suppose that if these facts had been shown in the case cited, the result would have been different. They suggest at least countervailing equities, which, as between two innocent parties, would have had force; how much it is needless to inquire now; they appear to some extent in this case, and might have been set up by the defendant against the claim of Killian Brothers. They are now relied upon by the plaintiff, and made the basis of her right of action. She is a purchaser in good faith, and became such in reliance upon the defendant's record. The cases therefore above referred to, and which are cited by the learned counsel for the respondent, lend no support to the judgment which he seeks to uphold. Nor do I perceive any reason why the record showing payment of the assessment does not estop the defendant from asserting the contrary. It became a debt and a lien by virtue of its entry upon the record, and is in no respect like the charge of a merchant upon his books. The record is for the public; with the book no one but its owner has concern, and of itself, it avails nothing; there is, therefore, no analogy in the modes of treatment to which they may be subjected. The assessment-roll is akin to a judgment; both records, and each creating a lien to be enforced by subsequent proceedings, if the debt or duty is not otherwise discharged. (*Mayor, etc.*, v. *Colgate, supra.*) If the latter is erroneously discharged, its lien cannot be restored so as to affect *bona fide* purchasers, or others standing in a similar relation, whose transactions were entered into in ignorance of the

error, and in reliance upon the truth of the record. (*King* v. *Harris*, 34 N. Y., 330.) The same rule applies here. There can be no doubt that the plaintiff was led by the entry upon the roll to believe that the assessments had been paid, and if they are enforced now, it will be to her preju-dice. It is contended, however, that while the record showed the fact of payment, it also showed that it was made by Killian Brothers, and that the plaintiff was thus put upon inquiry, which if followed up would have disclosed to her that the persons paying were strangers to the property, and the mistake under which the payment had been made. This view could not be taken without carrying the doctrine of constructive notice much farther than it has yet gone. It is resorted to from necessity, and with reluctance, and for the purpose of finding a ground of preference between equi-ties otherwise equal. In the fact stated there is nothing to excite attention, or impair the effect of payment, nor was the plaintiff bound to go beyond it, and ascertain why it was made by Killian Brothers. She was not called upon to suspect that it was not made voluntarily, and with good reason, or that the collector of assessments had received money under circumstances which would permit a repay-ment. She is chargeable with notice of the whole entry, but not with knowledge of any latent equity in favor of the payor. The important fact was that the assessments were paid, and there was nothing to qualify or affect it. There was no more reason for an inquiry as to why Killian Brothers paid it, than for an inquiry as to whence they obtained the money with which to pay it. The entry sug-gested no defect in either particular. No laches therefore can be imputed to her, nor has the doctrine of constructive notice any application.

Reliance is also placed by the respondent upon section 16, of chapter 579, Laws of 1853. It is in these words: "The clerk of arrears, upon the requisition of any person, shall furnish a bill of arrears of taxes * * * and of assessments which shall have been due twelve months,

or over, * * * and upon the payment of the said bill, * * * his receipt thereon (which shall be conclusive evidence of such payment), countersigned by the comptroller, * * * or the *certificate of the clerk of arrears countersigned by the comptroller, that there are no such liens on said lot or lots, shall forever free the said lot or lots, from all liens of * * * all assessments due, thirteen months or over prior to the date of said receipt or certificate,* and from all liens in consequence of sales for assessments * * * when the time allowed by law for redemption had not expired at the date or time of said payment or certificate."

I am unable to see that it has any application to the case in hand. The first clause relates only to assessments which have been due twelve months or over, and the second to those due thirteen months or over prior to the date of the receipt or certificate. The assessments in question were laid, one in July, and the other in August, 1872. They were actually paid March 7, 1873, less than nine months after they were due, while they were still in the collector's office, and before they came into the " Bureau of Arrears." The clerk of that department had therefore no duty to perform in regard to them. And while the certificate furnishes an easy and convenient method of proving that there was no lien for taxes, assessments, or water rates, of the character therein specified, it is not made by statute the only evidence of that fact, even as to those taxes. Nor can it be supposed that such was the intention of the Legislature, for if so, it would be impossible to establish a clear title to land within the city limits. The assessments are liens, and there can be no period of thirteen or twelve months within which they are not imposed, and by the time the statutory limit for one certificate was reached, another lien would attach : and as neither the receipt nor the certificate would be evidence of payment or extinguishment of any assessment of less than twelve or thirteen months' maturity, there would be no method of assuring a purchaser of city property that its obligations had been discharged. It is not denied that the assessment was

in fact paid, that it was received by the collector of assessments, that he was the proper officer to collect and receive it, that the entry showing payment was made in an official book kept by him, and in pursuance of his official duty. It was in fact paid and received with the intention of applying it upon the lot in question. Upon this trial these were the material facts. I think the record was the best evidence. But suppose it to have been lost or destroyed, then the receipt given by the collector to the Killian Brothers would have been the next best evidence ; but assume also that the receipt was not forthcoming, then like any other matter *in pais*, it could have been proved by witnesses. Nor does the fact that in making and receiving this payment the parties were acting under a mistake concerning the ownership of the lot, make any difference so far as this plaintiff is concerned ; she was misled by the defendant's act through its agent ; and it is estopped from setting up as against her, that the fact is different from the representation made by the record. This works no injustice. The slightest attention by Killian Brothers at the time of payment to the matter before them, would have prevented the mistake, and a very moderate degree of care on the part of the defendant, when three years afterwards they were called upon to rectify it, would have disclosed such a change of ownership of the lot, as might have justified the city in refusing to comply with the demand. There was then negligence at the outset, laches in discovering or making known the mistake, and an intervening purchaser in good faith, relying upon the record. Whether these facts properly set up would have availed the defendant, it is not now necessary to determine, but they are quite sufficient under the circumstances of this case to sustain the plaintiff's action. A contrary rule would open the door to gross frauds. The money was actually paid, and thereby the lien discharged.

I think that the plaintiff was entitled to the relief demanded, and that the learned referee erred in directing a dismissal of the complaint.

The judgment of the General Term, and that entered upon the report of the referee should therefore be reversed, and as there is no dispute as to the facts, the plaintiff should have judgment according to the prayer of her complaint, with costs.

All concur.

Judgment accordingly.