[No. 17047. Department Two. November 9, 1922.]

MAE SEWARD, *Respondent*, v. ARCHIBALD J. FISKEN, *Respondent*, KING COUNTY et al., *Appellants*.[1]

COUNTIES (57) — LIABILITIES — GOVERNMENTAL CAPACITY. Under Rem. Comp. Stat., § 11254, requiring the treasurer to give a receipt for taxes paid and enter the same on the tax-roll, the county in collecting taxes, acts in a governmental and not a proprietary capacity.

TAXATION (114)—PAYMENT—EFFECT OF CHECK. The general rule is that a check given in payment of taxes does not discharge the tax unless the check is paid.

ESTOPPEL (26, 27)—AGAINST COUNTY—PAYMENT OF TAX—VENDEE OF REAL PROPERTY. The doctrine of estoppel applies to corporations as well as to individuals, where a county issued a receipt signed by the county treasurer for taxes paid by check, and a purchaser of the property relied thereon when the receipt was exhibited to him; in view of Rem. Comp. Stat., § 11254, making it the county treasurer's duty to issue tax receipts and enter them on the tax roll.

Appeal from a judgment of the superior court for King county, Honorable S. H. Steele, judge *pro tempore,* entered November 23, 1921, upon overruling

[1]Reported in 210 Pac. 378.

a demurrer to the cross-complaint, in an action for equitable relief. Affirmed.

*Malcolm Douglas, Howard A. Hanson,* and *Arthur Schramm, Jr.,* for appellants.

*Elias A. Wright* and *Sam A. Wright,* for respondent.

MAIN, J.—This action, as originally instituted, was one to recover a money judgment against Archibald J. Fisken, who was the only defendant named in the complaint. When Fisken answered, he filed a cross-complaint and caused the county of King and its treasurer to be made parties. By the cross-complaint, it was sought to restrain the county and the treasurer from asserting that the taxes upon specified real property for a certain year had not been paid. After the cross-complaint was filed, the original complaint, by stipulation, was amended to ask for the same relief as that sought in the cross-complaint. The county and its treasurer demurred to the cross-complaint, which demurrer was overruled. They elected to stand upon the demurrer, and judgment was entered as prayed for. From this judgment, the county and its treasurer appeal. The facts are not in dispute and will be here sufficiently set forth to present the controlling question.

In June, 1919, the respondent Fisken, as agent for the Mortgage Bond Company of New York, procured from this company for respondent Mae Seward a loan of $3,000, to be secured by mortgage upon lots ten (10) and eleven (11), block one (1), of Densmore's Summit Addition to the City of Seattle. When Mrs. Seward applied for this loan, she did not own this property, but was about to purchase it from Albert A. Rutledge and wife, to whom the Mortgage Bond Company of New York had previously made a loan of

$2,500, secured by a mortgage upon the same property. In addition to the Rutledge mortgage, there were outstanding at the time general taxes for the last half of the year 1917, and all of the year 1918. In consummating the transaction, a deed was taken by Mrs. Seward from the Rutledges, and a mortgage given by her to the Mortgage Bond Company of New York for the sum of $3,000, she instructing Fisken to apply the proceeds of the loan, $2,407.54, to the extinguishment of the Rutledge mortgage, and the balance of $592.46 upon the purchase price to the Rutledges, the latter not to be paid until Fisken was satisfied that the taxes had been paid. One Mark Munson acted for the Rutledges in the transaction. Fisken paid the Rutledge mortgage as instructed, and when Munson exhibited to him a receipt from the county treasurer showing that the taxes had been paid, the $592.46 was paid over to him. Munson had given his check to the county treasurer in payment of the taxes at the time the receipt was issued. When the check was presented, payment was refused for want of sufficient funds. At the time the check was accepted by the county treasurer, he made a notation upon the tax rolls that the taxes had been paid, and this notation remained thereon for a period of approximately thirty days, when it was canceled. Thereafter, Mrs. Seward brought this action against Fisken to recover the amount of these taxes, and, as above stated, when he answered and filed a cross-complaint, the cause was resolved in effect to one by Mrs. Seward and Fisken against the county and its treasurer, seeking to restrain them from asserting that the taxes had not been paid, and quieting the title of Mrs. Seward to the property above described as though the taxes had in fact been paid.

A few preliminary statements will tend to simplify the discussion upon the controlling question in the

case. It must be remembered that this is not a con-
troversy between the person paying the taxes, and
the county, but is one by an innocent third person,
Mrs. Seward, who purchased the property and paid
over a portion of the purchase price sufficient to pay
the tax, in reliance upon a receipt exhibited to her
agent which had been issued by the county treasurer
showing that the taxes had been paid. The act of the
county treasurer in issuing the receipt was not one
where power was entirely lacking, but was the exer-
cise of an existing power in a defective or irregular
manner. Under this statute, Rem. Comp. Stat., § 11254,
the county treasurer, upon the payment of any tax, is
required to give a receipt therefor and enter the same
upon the tax roll. The general rule is that a check
given in payment of taxes does not operate to dis-
charge the tax unless the check be in fact paid. The
county, acting through its treasurer in collecting taxes,
acts in a governmental and not in a proprietary capac-
ity. The question, then, is reduced to this: Will the
county be estopped from asserting that a tax has been
paid, as against a complaining party who has pur-
chased the property covered by the tax and paid over
the purchase money, or a portion of it, to the seller
in reliance upon a receipt exhibited, signed by the
county treasurer, showing that the taxes have been
paid?

Upon this question there is a dearth of authority.
So far as we are advised, it has been before the courts
upon only two or three occasions and is little dis-
cussed by the text writers. In *Curnen v. Mayor etc.*,
79 N. Y. 511, the action was to compel the defendant to
discharge a lot in the city of New York belonging to
the plaintiff from the lien of certain assessments. It
appeared that, before the plaintiff paid the purchase

price, she ascertained at the proper office from the official records that the assessments had been paid. Plaintiff thereupon, after deducting certain assessments which appeared as paid upon the records, paid the balance of the purchase price for the property. The assessments were in fact paid at the time stated by a person not owning the property, through a mistake. This party, after discovering his mistake, brought an action and recovered the amount of money thus paid. The plaintiff, or the purchaser of the property, who had relied upon the records, was not a party to that action. After the person paying the taxes had prevailed in the action brought by him, the entry of payment was cancelled. Thereafter, the plaintiff, who was the purchaser, brought action to restrain the defendant from asserting as against her that the taxes had not been paid, and it was there held that she was entitled to the relief sought, since, being a *bona fide* purchaser of the property and in making the purchase relied upon the records showing that the assessments had been paid, the defendant would be estopped from asserting that they had not been paid. It was there said:

"The record is for the public; with the book no one but its owner has concern, and of itself, it avails nothing; there is, therefore, no analogy in the modes of treatment to which they may be subjected. The assessment-roll is akin to a judgment; both records, and each creating a lien to be enforced by subsequent proceedings, if the debt or duty is not otherwise discharged. *(Mayor, etc., v. Colgate, supra.)* If the latter is erroneously discharged, its lien cannot be restored so as to affect *bona fide* purchasers, or others standing in a similar relation, whose transactions were entered into in ignorance of the error, and in reliance upon the truth of the record. *(King v. Harris,* 34 N. Y. 330.)* The same rule applies here. There

can be no doubt that the plaintiff was led by the entry upon the roll to believe that the assessments had been paid, and if they are enforced now, it will be to her prejudice."

It is sought to distinguish that case because there the taxes were paid, not by check, but in money. This is true, but the money was paid over under a mistake of fact. A third person who innocently deals with the property is in exactly the same position whether the taxes or assessments in question have been paid by money or by the giving of a check, when in one case the money is paid under a mistake of fact, and in the other the check is returned not paid. The record in both cases showing that the taxes had been paid, the effect is the same. But even if there is the distinction between that case and this which is sought to be made, the argument and discussion in that case and the holding sustain the position that the doctrine of estoppel will apply. In the later case of *O'Leary v. Board of Education of the City of New York*, 93 N. Y. 1, 45 Am. Rep. 156, it was said:

"A fact once admitted by a corporation through its officer duly and properly acting within the scope of his authority, is evidence against it and cannot be withdrawn to the prejudice of anyone who in reliance upon it has changed his situation in respect to the matter affected thereby. In such a case the doctrine of estoppel applies to a corporation as well as to an individual."

citing the *Curnen* case.

In the case of *Kuhl v. Mayor of Jersey City*, 23 N. J. Eq. 84, the plaintiff had purchased certain land, and at the time of the purchase had procured a certificate from the city tax collector showing the amount of the taxes and assessments in arrear against the property. On the day when the deed was delivered and the

consideration paid, the seller of the property went to the office of the city collector of taxes and paid the same by giving a check, which the collector received and thereupon receipted the tax `bills. The tax receipts were presented to the plaintiff, the purchaser of the property, and in reliance thereon the deed was accepted from the seller and the consideration paid to him. The check was not paid, and thereafter the entry of payment upon the books of the collector was canceled. The action was by the purchaser of the property to restrain the defendants from asserting as against him, who was a *bona fide* purchaser, that the taxes and assessments had not been paid. It was there held that the defendants were not estopped, because in issuing the receipt the tax collector had no intention to influence the conduct of any one by it, and it was not apparent to him that the issuing of the receipt might operate as a representation that the taxes had been paid. It was said that, before there will be an estoppel, "there must be such intention, or that it must be so apparent that the representation will have that effect, that the intention must be presumed." The rule there stated is the same rule which is applied in this state where a public or municipal corporation is acting in a proprietary capacity as distinguished from a governmental. There is no discussion in the opinion as to the difference in the two capacities in which a municipal corporation may act.

In *Franklin County v. Carstens,* 68 Wash. 176, 122 Pac. 999, it was held that the defendant, which, by declaration and conduct of its officers, had induced certain conduct, would be estopped.

The basis of the *Kuhl* case, *supra,* which deals with a corporation acting in a governmental capacity, and that of *Franklin County,* which deals with a municipal

corporation acting in a private capacity, are the same. If the same rule is to be applied by the court deciding the *Kuhl* case when the question is one involving a governmental function as when a municipal corporation is acting in a proprietary capacity, then the view of that court would not be in harmony with the doctrine of the *Franklin County* case.

In *Philadelphia Mortgage & Trust Co. v. Omaha*, 63 Neb. 280, 88 N. W. 523, 93 Am. St. 442, 57 L. R. A. 150, the view was first expressed, though the question was not involved in the case, which was to the effect that estoppel would not operate against a municipal corporation acting in a governmental capacity. Upon a rehearing, a second opinion was written in which that question was reserved. The language of the opinion upon rehearing, so far as it has any bearing at all, would seem to indicate that the court was leaning in the opposite direction from that indicated in the first opinion. It is of the essence of justice to have a fixed standard and that there should not be one standard for the state or its municipal corporations and another for the citizen. If it should be held that the county was not estopped in a case like the present, it would seriously interfere with the facility with which real estate transactions are conducted. It is a well known fact that it is a common occurrence for the purchaser of property, before he pays over the purchase price, to have exhibited to him receipts showing the payment of taxes, and in reliance upon these the purchase price is paid. If the purchaser cannot rely upon the official receipt of the proper officer, it would lead to endless inconvenience. It is said, however, if the doctrine of estoppel be applied, then it will interfere with the convenient practice which is now adopted by county treasurers in accepting checks in payment

of the taxes and issuing a receipt therefor. It can hardly be assumed that a county treasurer makes it the invariable practice to issue a receipt upon the presentation and acceptance of every check presented in the payment of taxes. In issuing the receipt, a county treasurer could hardly be ignorant of the fact that it does constitute a representation, or may be relied upon by a party purchasing the property therein described, that the taxes are in fact paid. It seems to us that the better rule is that announced in *Curnen v. Mayor etc., supra.*

The questions whether Mrs. Seward, the respondent, would have had a right to maintain an action against the county treasurer and his bondsmen, and whether the county will now have a right to maintain such action, are not now before us and we express no opinion thereon.

The judgment will be affirmed.

PARKER, C. J., HOLCOMB, MACKINTOSH, and HOVEY, JJ., concur.