## NEW YORK LIFE INS CO v BUNOWITZ et

Ohio Appeals, 8th Dist, Cuyahoga Co

No 13870.   Decided Dec 3, 1934

Frank T. Cullitan, Cleveland, and Margaret R. Lawrence, Cleveland, for appellant.

Garfield, Cross, Daoust, Baldwin & Vrooman, Cleveland, for appellee.

Baker, Hostetler, Sidlo & Patterson, Cleveland, Amicus Curiae.

SHERICK, PJ, LEMERT and MONTGOMERY, JJ, (5th Dist) sitting.

**OPINION**

By SHERICK, PJ.

Our attention is directed to two provisions of the statutes, the first being §5671 GC which prescribes that taxes levied attach to all real property on the day preceding the second Monday in April annually and continue until such taxes, with any penalties accruing thereon, are paid. The second section being §2744 GC which reads:

"A County Treasurer may receive checks, but such receipt shall in no manner be regarded as payment. No sum shall be considered paid until the money therefor has been received by the treasurer or a depositary. No responsibility shall attach in any manner directly or indirectly to a treasurer, his sureties or the county by reason of the

receipt of a check and collection of checks shall be entirely at the risk of 'the person turning them into the treasury."

We believe that a further code section, that is, §2650 GC is also enlightening of legislative purpose and intent. This section provides, that

"When any tax is paid at the office of the county treasurer or at any tax receiving office, the county treasurer shall give to the person paying it a receipt therefor. * * * No receipt given by the county treasurer for payment made otherwise than in lawful money or in the notes specified in §2646 GC shall be valid unless and until the lawful monies represented by such payment are received into the county·treasury, or a county depositary."

The appellant says that these sections coupled with the notation appearing on the tax receipts, which says, "READ Checks received for Taxes and not paid on presentation, the Taxes will be restored to Duplicate without further notice, and penalty added," were within the knowledge of the appellee and notice to it that it had no right to rely upon the issuance of the receipts but was bound by the tax book record. The Insurance Company controverts this claim and advances several authorities to maintain its claim of equitable estoppel.

Three Pennsylvania cases are urged, City of Philadelphia v Baxter, 12 L.R.A. 751; City of Philadelphia v Anderson, 142 Pa. 357, 21 Atl. 976, 13 L.R.A. 751; Antanoff v Zoylan, 158 Atl. 636. In two of these cases an innocent purchaser had bought property after having first procured a certificate of and from the receiver of unpaid taxes which recited that the property was clear of delinquent taxes. Under a statute of 1855, of that state, that officer was required by law to furnish such a certificate to any one interested therein upon payment of the fee required. That statute made such a certificate evidence of title. Its recitals were taken directly from the tax records by the custodian thereof and disclosed the true state of that record. It is held that the statute was passed to protect innocent purchasers and to facilitate conveyancing. In both cases it was thereafter attempted to affix an old unnoted tax lien on the properties, and the court held, and properly so, that the city was equitably estopped from so doing. The Antanoff case applies the same rule to a mortgagee who by reason of a clean certificate forebore to foreclose his lien.

The Iowa cases of Jiska v Ringgold

138

County, 11 NW 618, is a like holding with the additional feature in that the purchaser also caused the tax books, to be examined as well as having procured the certificate of the county treasurer which §848 of the laws of that state required that officer to issue.

Two cases from New York are next cited, Curnen v New York, 79 N. Y. 511; and Weil v City of New York, 119 NE 1085. The purchasers in each case had examined the tax records and found them clear of tax liens and relied thereon. It was held that in such case the city was estopped to assert its thereafter discovered tax lien as against the purchased properties.

The last case in point but one to which our attention is directed is that of Seward v Fisken, 122 Wash. 225, 210 Pac. 378, 27 A. L.R. 1208. This case directly supports the appellee's contention. It is held that:

"A county whose officer, upon receipt of a check in payment of a tax on certain property, marks the tax paid and issues a proper receipt, is estopped from asserting the non-payment of the tax when the check is dishonored as against one who purchases and pays for the property in reliance upon the receipt."

There seems to be but one distinguishing fact, that being, the officer's act in noting the tax paid on the tax record. The opinion is also silent concerning any statute of that state which might pertain thereto. The reason for the conclusion reached is based upon two grounds, first, public convenience in conveyancing, and second, that the rule should be the same both as to individuals and political subdivisions of the state.

Both parties to this suit advance the case of Herzstan v Sparks, Treas., 31 OLR 292. The syllabus thereof reads:

"Injunction lies against collection of taxes from a purchaser of real estate, who before making the purchase consulted the public records and inquired of the county treasurer as to whether there were any taxes charged against the property, and found the taxes marked paid (by mistake) and was told by the treasurer that they had all been paid."

It is evident that the purchaser in this case did not rely upon the tax receipt but searched the record and placed his reliance therein. We comment on this case because it is the only Ohio case bearing in any way upon the matter in issue, but we must conclude that that set of facts is not like the facts before this court,

The appellant places his chief reliance in Kuhl v Mayer of Jersey City, 23 N. J. Eq. 84. Therein it is held that:

"A receipt for taxes on real property, given by a tax collector on receiving a check does not estop him from showing that the check was unpaid, although a purchaser was induced by such receipt to pay the whole consideration. The collector did not give the receipt, knowing that it would be used for such purpose; nor does the mere giving of a receipt which is only a voucher of payment between the parties, and always liable to be disproved, raise the presumption that it will be used to defraud a purchaser."

This conclusion is grounded on the reason that "tax receipts are only intended as evidence in favor of the taxpayer against the city, not as muniments or evidence of title." It appears to a majority of this court that this reasoning is sound, and when considered in conjunction with the provisions of §§2744 and 2650 GC, that conclusion seems almost unescapable. It is the general theory of our law that public records are notice to all the world of what they speak. If this be true, as it surely is, then we see no useful purpose to be served by disregard of that theory, especially so where it is provided that a treasurer may accept checks "but such receipt shall in no manner be regarded as payment, etc.", and "receipt * * * otherwise than in lawful money shall be valid unless and until the lawful moneys represented by such payment are received into the county treasury." One relying upon the recital of a tax receipt other than the taxpayer must know that it can not be a valid receipt unless "lawful money" has been paid into the treasury. The burden is upon him to acquire that knowledge from the public record.

Judgment is entered in favor of the appellant, exceptions may be noted.

MONTGOMERY, J, concurs.
LEMERT, J, dissents.