BAKER and BECKER, JJ., concur.

[No. 44013-6-I.   Division One.   November 22, 1999.]
BANKERS TRUST COMPANY, *as Trustee, Appellant*, v.
SNOHOMISH COUNTY, *Respondent*.

*Larry Eugene Leggett* of *Preg O'Donnell Sargeant & Gillett, P.L.L.C.*, for appellant.

*James H. Krider, Prosecuting Attorney*, and *Steven Joseph Bladek, Deputy*, for respondent.

KENNEDY, C.J. — Bankers Trust Company—the assignee of a beneficial interest under a deed of trust on a parcel of real property—appeals the summary judgment dismissal of its complaint against Snohomish County. Bankers Trust contends that the County should be equitably estopped from collecting real property taxes owing on the property for half of 1992, all of 1993, and half of 1994, because these delinquent taxes did not appear on the County's March 1996 tax statement pending a refund to a party with no legal interest in the property who mistakenly paid these taxes.

RCW 84.69.020(8) requires the County to refund taxes

that were paid as a result of mistake by a person having no legal interest in the property unless a bona fide purchaser has acquired rights that would preclude the assessment and collection of the refunded tax. Because Bankers Trust was not a bona fide purchaser of the property,[1] the County was obligated to refund the taxes that were paid by mistake by the person with no legal interest in the property. Nonetheless, Bankers Trust urges us to apply principles of equitable estoppel to prevent the County from collecting these taxes. In light of the legislative policy implicit in RCW 84.69.020(8), we cannot say that equitable estoppel is necessary to prevent a manifest injustice in this case. Moreover, to estop the County from collecting these taxes would be to impair the exercise of government functions. Accordingly, we affirm the trial court's dismissal of Bankers Trust's complaint.

## FACTS

At an Internal Revenue Service auction in 1991, Barry A. Hammer purchased a parcel of real property under a Certificate of Sale of Seized Property. In early 1992, the previous owners of the property, Kathleen and Daniel Mann, exercised their right of redemption and reclaimed the property from Hammer. Although Hammer had no legal interest in the property, in April of 1994 he inadvertently paid the County $3,519.61 in delinquent taxes owing on the property for half of the year 1992, all of 1993, and half of 1994. On February 6, 1996, Hammer realized his mistake and petitioned the County for a refund.

During the same month, the Manns refinanced the property, and on March 1, 1996, Accredited Home Lenders, Inc., recorded a deed of trust on the property. Under the refinancing terms, Accredited Home Lenders agreed to pay any delinquent taxes owing on the property out of the loan

---

[1]At oral argument before this court, Bankers Trust conceded that it was not a bona fide purchaser of the property.

proceeds.[2] In March 1996, the Snohomish County Treasurer provided Freedom Escrow, Inc.—the escrow agent handling Accredited Home Lender's closing transaction— with a tax statement reflecting $5,975 as the amount of taxes owing on the property through the year 1995. Unbeknownst to Accredited Home Lenders, a substantial portion of these taxes were based on delinquent personal property taxes for tax years 1990 through 1995 that the Manns owed, and which the County Treasurer had certified and charged against the Mann's real property, as the Treasurer is authorized to do by RCW 84.60.040. On Accredited Home Lender's behalf, Freedom Escrow paid the amount that the County claimed to be due and owing, in full, and the County cashed this check. Accredited Home Lender's cancelled check served as its receipt showing that these taxes had been paid. Accredited Home Lenders later assigned the beneficial interest under its deed of trust to Bankers Trust Company, the appellant in this case.

On July 22, 1996, the County issued a refund to Hammer for the full amount he mistakenly paid for the taxes owing on the property for half of 1992, all of 1993, and half of 1994, plus interest, and reinstated these taxes on the County's tax rolls. The County sent the Manns a bill for these taxes along with a letter of explanation. Then, on June 10, 1997, the County issued a Certificate of Delinquency on the property, alleging that the real property taxes "for the year of 1994 and prior year[]s are due and delinquent[.]" Clerk's Papers at 165. In October 1997, Bankers Trust foreclosed on the property. To prevent the sale of the property by the County, Bankers Trust paid the delinquent taxes, under protest, in December 1997.

On February 9, 1998, Bankers Trust filed a complaint against the County in Snohomish County Superior Court

---

[2]Although the refinancing agreement is not in the record, counsel for Bankers Trust explained its terms at oral argument before this court, and there is no dispute with respect to these terms.

requesting a refund of $6,037.79.[3] Bankers Trust moved for summary judgment, contending that the "County is estopped from claiming that real property taxes for the years 1992, 1993, and 1994 are due because the taxes were paid in full and the County Treasurer issued a receipt representing that the taxes were paid in full." Clerk's Papers at 97. In response, the County moved for summary judgment on the basis that "Bankers Trust Company cannot establish the required elements of equitable estoppel." Clerk's Papers at 139. On December 9, 1998, the trial court denied Banker Trust's motion and granted the County's motion, dismissing Bankers Trust's complaint with prejudice. Bankers Trust appeals.

## DISCUSSION

Bankers Trust argues that the County is equitably estopped from collecting real property taxes owing on the property for half of 1992, all of 1993, and half of 1994 because these delinquent taxes did not appear on the County's March 1996 tax statement when Accredited Home Lenders paid the amount of taxes that the Treasurer's Office represented to be then due and owing. Put another way, Banker's Trust contends that the County was required to disclose on the public record that a claim for a refund was pending from a party with no legal interest in the property who claimed to have mistakenly paid these taxes. Because the County failed to make that disclosure, Bank-

---

[3]The origin of Bankers Trust's $6,037.79 figure is unclear from the record. According to Bankers Trust's December 1997 protest letter to the County, Bankers Trust paid $6,037.99 to satisfy the property's alleged delinquent taxes for the years 1992 through 1995. But Bankers Trust's complaint challenges the delinquent property taxes owing in 1992, 1993, and 1994, but not the taxes owing in 1995. By contrast, Hammer's erroneous payment that the County sought to recollect from Bankers Trust was only $3,519.62 for half of 1992, all of 1993, and half of 1994, although with interest added. A precise accounting is unnecessary to the disposition of this case. It is clear from the record that the taxes Accredited Home Lenders paid in March 1996 were not the same taxes that Hammer erroneously paid in 1994, any apparent overlapping of years being due to the personal property taxes that were certified against the property in the time intervening between Hammer's payment and that of Accredited Home Lenders.

ers Trust urges us to order the County to refund the delinquent taxes that Bankers Trust paid under protest.

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "The motion will be granted, after considering the evidence in the light most favorable to the nonmoving party, only if reasonable persons could reach but one conclusion." *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998). "When reviewing a summary judgment order, an appellate court engages in the same inquiry as the trial court." *Id.* But on "review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court." RAP 9.12.

■■ To succeed on an equitable estoppel claim, a party must prove by clear, cogent, and convincing evidence "(1) an admission, statement or act inconsistent with a claim later asserted; (2) reasonable reliance on that admission, statement, or act by the other party; and (3) injury to the relying party if the court permits the first party to contradict or repudiate the admission, statement or act." *Department of Ecology v. Theodoratus*, 135 Wn.2d 582, 599, 957 P.2d 1241 (1998). "Equitable estoppel against the government is not favored. Therefore, when the doctrine is asserted against the government, equitable estoppel must be necessary to prevent a manifest injustice, and the exercise of government functions must not be impaired as a result of estoppel." *Id.* (citation omitted); *see also* 21 A.L.R.4TH, § 3 at 586-89 (1983 & 1999 Supp.) (listing twenty jurisdictions, including Washington, that have recognized that estoppel of the state or local government in tax matters is disfavored).

In *Seward v. Fisken*, 122 Wash. 225, 210 P. 378, 27 A.L.R. 1208 (1922), our Supreme Court addressed the issue of whether the County was

> estopped from asserting that a tax has been paid, as against a complaining party who has purchased the property covered by the tax and paid over the purchase money, or a portion of it, to the seller in reliance upon a receipt exhibited, signed by the County Treasurer, showing that the taxes have been paid[.]

*Id.* at 228. The taxpayer in *Seward* paid real property taxes using a check from an account with insufficient funds. *Id.* at 227. Nonetheless, the County Treasurer issued a signed receipt that indicated that the property's taxes had been paid, and noted the same on the tax rolls. *Id.* A bona fide purchaser, relying on the Treasurer's statement that the taxes had been paid, then purchased the property. *Id.* at 227-28. The court concluded that the County was estopped from asserting to the bona fide purchaser that the taxes had not been paid, explaining that in "issuing the receipt, a county treasurer could hardly be ignorant of the fact that it does constitute a representation, or may be relied upon by a party purchasing the property therein described, that the taxes are in fact paid." *Id.* at 233.

At first glance, the *Seward* case seems to support Bankers Trust's argument in the present case. But *Seward* does not control the result here for two reasons. First, unlike the dispute in *Seward*, which was over taxes that the County initially averred were paid and later attempted to collect, the County Treasurer in the present case did not attempt to collect the same taxes that Accredited Home Lenders paid in March 1996. Instead, the County sought to collect the taxes that Hammer paid in error and for which he obtained a refund. Indeed, the taxes that Accredited Home Lenders paid as reflected in the County's March 1996 tax statement are not at issue in this case. Those taxes, which included certain personal property taxes that had been certified against the real property, as well as real property taxes then owing, have been paid and the County is not seeking to have them paid again. The taxes that are at issue in this case are the taxes owing on the property for half of 1992, all of 1993, and half of 1994 that Hammer mistakenly paid in April 1994 and the County refunded in

July 1996—not the same taxes that were paid by Accredited Home Lenders. Thus, the County's receipt of Accredited Home Lender's payment of the taxes according to the County's March 1996 tax statement is not inconsistent with the County's request for payment of taxes owing on the property for half of 1992, all of 1993, and half of 1994.

And second, *Seward* is distinguishable because it involved claims of a bona fide purchaser. Bankers Trust stands in the shoes of its assignor, Accredited Home Lenders, a lender, and is not entitled to the same protections as a bona fide purchaser. RCW 84.69.020(8) requires the County to refund taxes that were paid as a result of mistake by a person having no legal interest in the property, unless a bona fide purchaser has acquired rights that would preclude the assessment and collection of the refunded tax. By enacting this statute, our Legislature effectively determined that a person who erroneously pays real property taxes for a parcel he or she does not own must take the loss when a bona fide purchaser purchases that property before a refund is made. Notably, the County does not take the loss in such a situation. Indeed, the County cannot make the refund if a bona fide purchaser has acquired the property. By contrast, with respect to lenders such as Accredited Home Lenders and its assignee Bankers Trust, our Legislature has chosen instead to protect the person who erroneously paid the taxes, leaving the lender with such remedies as it may have against its borrower and the encumbered property by virtue of the deed of trust or mortgage. The County does not take the loss in this situation either.

In light of these legislative policy determinations, we cannot say that equitable estoppel is necessary to prevent a manifest injustice in this case. Because Bankers Trust was not a bona fide purchaser, RCW 84.69.020(8) required the County to refund the taxes Hammer mistakenly paid. To estop the County from collecting these taxes altogether—as Bankers Trust requests—would be to impair the exercise of government functions. The County is entitled to collect delinquent real property taxes from a non-bona fide purchaser,

notwithstanding the fact that these delinquent taxes did not appear in the County's records pending a RCW 84.69.020(8) refund to Hammer.

This is not to say that we approve of the Treasurer's failure to disclose the existence of the pending refund claim when Accredited Home Lenders made inquiry regarding taxes due and owing. Mistaken payments such as Hammer's happen with sufficient frequency so that our Legislature has seen fit to adopt RCW 84.69.080(8) governing refunds. We have pored over the portions of the County's tax rolls included in the record on appeal and conclude that although a reasonably careful person could have ascertained from the codes used on the tax rolls that personal property taxes had been certified against the property, knowing that to be true would not have led to the discovery that a stranger having no interest in the property had mistakenly paid real property taxes due for a portion of the time during which the personal property taxes had become delinquent. By carefully examining the receipts corresponding with receipt numbers shown on the rolls, a researcher could have discovered that someone other than the Manns had paid real property taxes in April 1994, but that fact alone would not necessarily indicate that a claim for a refund was pending. We agree with Bankers Trust that lenders rely and ought to be able to rely upon County records when closing loans secured by real property. Technological advances in electronic record keeping are such that it ought to be possible for pending refund requests to be matched with tax rolls relating to specific parcels of real property with relative ease. But Bankers Trust's arguments in this regard, while persuasive, are better addressed to the Legislature than to the courts.

Thus, we conclude that the County is entitled to collect delinquent real property taxes owing on the property here at issue for half of 1992, all of 1993, and half of 1994 from Bankers Trust, a non-bona fide purchaser. Accordingly, we affirm the trial court's dismissal of Bankers Trust's complaint against the County.

GROSSE and COX, JJ., concur.